**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

| | |
|---|---|
| REGIONS BANK, an Alabama banking corporation, d/b/a REGIONS FUNDING : : : Plaintiff, : v. : : PYRAMID II JANITORIAL SUPPLIES : AND EQUIPMENT, INC., a Florida : corporation, PYRAMID AMERICA, LLC, a : Florida limited liability company,  HARVEY : ROLLINGS, individually, TIMOTHY : LYNCH, individually, STORMY WILDER, : individually, and BARBARA O'CONNELL, : individually, : : Defendants. : _____ : | CIVIL ACTION FILE NO. 2:08-cv-00031-MMH-SPC JUDGE INJUNCTIVE RELIEF SOUGHT |

**AMENDED MOTION FOR PRELIMINARY INJUNCTION[1]**

Regions Bank, an Alabama banking corporation, d/b/a Regions Funding ("Regions"), Plaintiff in the above-styled action by and through undersigned counsel, moves the Court for an order under Fed. R. Civ. P. 65 to preliminarily restrain Defendants Pyramid II Janitorial Supplies and Equipment, Inc. ("Pyramid II"), Pyramid America, LLC ("Pyramid America") and Timothy Lynch ("Lynch") from transferring/conveying any ownership rights or selling any assets of Pyramid America or Pyramid II (collectively the "Pyramid Entities") and an order prohibiting transfer of funds (other than normal operating costs but specifically excluding any dividends/distributions or other payouts to shareholders or members) out of accounts owned by the Pyramid Entities that contain or did contain any monies obtained from Regions through Best

---

[1] Regions originally filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2).  Based upon the Court's analysis in its Order denying the Temporary Restraining Order (Dkt. 4) and representations made by other Defendants' responses to Regions' original motion, the Motion has been amended to seek preliminary injunctive relief against only Defendants Pyramid II, Pyramid America, and Timothy Lynch.

Title Solutions, Inc. ("Best Title"). This motion is based upon facts set forth in the Amended Verified Complaint (Dkt. 39) filed simultaneously herewith and adopted by reference herein.

The facts set forth in the Amended Verified Complaint establish that Defendants engaged in an elaborate loan kiting scheme perpetrated against Regions. Fraudulent loan applications were submitted to Regions by Groves Funding Corporation ("Groves Funding"), an Ohio mortgage lender, along with requests to fund certain fictitious loan closing transactions. Best Title Solutions, Inc. ("Best Title"), a Florida settlement firm, and Classic Title Agency, LLC ("Classic Title"), an Ohio settlement firm, purportedly were to close those fictitious transactions. Best Title received nearly $2 million dollars from Regions to fund those loans, but the specific closings never occurred.

Rather than return the money to Regions, as Best Title was required to do under a Master Bailment Agreement, Defendants Stormy Wilder and/or Barbara O'Connell, agents of Best Title, took a portion of the money and combined it with other funds it received from Classic Title (intended for the closing of other fraudulent loans) and wired those funds to the trust account of Defendant Harvey Rollings' law firm in order to fund an unauthorized transaction between the Pyramid Entities ("the Pyramid Transaction"). In all, approximately $2.3 million dollars of Regions' funds were used to fund the Pyramid Transaction. The money at issue is identifiable and has been converted, at least in part, to obtain ownership interest in the Pyramid Entities. As the money used to purchase the Pyramid Entities was fraudulently obtained from Regions, the rightful owner of these entities is Regions and the Pyramid Entities should be held in constructive trust.

**I.      Summary of Grounds for the Motion**

Regions seeks relief in the form of a preliminary injunction pending the outcome of this matter to preserve the *status quo* and prevent irreparable harm pending a final determination of

the merits of Regions' claims. *U.S. v. State of Alabama,* 791 F.2d 1450, 1469 (11th Cir. 1986). Regions makes this request to prevent dissipation and to ensure that no ownership transfer occurs between the Pyramid Entities or any third party. For the reasons more fully set forth in the following Memorandum of Law, the Court should grant Regions the requested relief.

**II.    Regions has Established Proof of All Elements to Establish an Injunction**

Regions will suffer irreparable injury if Pyramid America/Pyramid II and Defendant Lynch are not enjoined from transferring or conveying any rights in the Pyramid Entities or otherwise dissipating assets that rightfully belong to Regions. Monetary damages cannot fully compensate Regions bank as the assets at issue, including the ownership interests in Pyramid II/Pyramid America are capable of being dissipated, transferred, conveyed or otherwise wasted in an effort to continue avoiding repaying Regions.

Injury is imminent as Regions has knowledge that Pyramid II/Pyramid America has defaulted on a loan owed to Lynch. Consequently, Lynch has made demand that ownership shares be transferred to him under the terms of the loan agreement. Once Lynch has the necessary control to sell the Pyramid Entities to a bona fide purchaser, Regions' ability to maintain a claim on the corporate assets, which are the converted form of the traceable monies at issue in this case, will be severely restricted if not extinguished. Regions is substantially likely to succeed on the merits and the harm to Regions and to the public by not entering the temporary restraining order outweighs any potential harm to Defendants if a preliminary injunction is entered.

Regions is willing to post a reasonable bond, although a minimal bond should be necessary under the circumstances as Defendants will suffer no damage if a preliminary injunction is entered by the Court, as the assets seeking to be preserved are rightfully owed to Regions and should not be utilized by Defendants in any event.

WHEREFORE, Plaintiff, Regions Bank demands:

**1.** Entry of a Preliminary Injunction directing that Pyramid America, Pyramid II and Defendant Lynch:

    a. Immediately cease use of any funds associated or affiliated with, related to or derived from Regions bank and or the Pyramid Transactions, other than for normal operating costs but specifically prohibiting any dividends/distributions or other payouts to shareholders or members;

    b. Immediately cease all actions to transfer any ownership interest, shares, stocks or other indicia of ownership over Pyramid II/Pyramid America to Defendant Timothy Lynch or any other person or entity pending the outcome of this case;

    c. Perform a full accounting of all funds received from Regions Bank or Best Title whether directly or indirectly, including the disposition of such funds or the current location of the same, including account numbers for any bank accounts, certificate of deposits, mutual funds or any other financial vehicle in which these funds were placed;

    d. Provide a full accounting of all funds received whether directly or indirectly, from the sale of Pyramid America to Pyramid II including but not limited to any proceeds, payments, commissions or remunerations of any kind associated with the transaction and provide the disposition of such funds or the current location of the same, including account numbers for any bank accounts, certificate of deposits, mutual funds or any other financial vehicle in which these funds were placed;

    e. Provide Regions all contact and account information (including routing and account numbers) for the name and bank accounts of all banks holding or operating accounts and/ or trust accounts owned or operated by any of the Pyramid America/Pyramid II and Defendant Lynch to which any funds from Regions Bank and/or funds from the Pyramid Transaction were wired, placed or held;

    f. Appointing a receiver to protect and oversee the assets and operations of Pyramid America and Pyramid II.

## **MEMORANDUM OF LAW**

**I.    INTRODUCTION**

This case involves an elaborate and well orchestrated conspiracy amongst Defendants to

bilk Regions out of millions of dollars.[2] Defendants have perpetrated a loan kiting scheme whereby Regions was fraudulently induced into making approximately $2.3 million in loans under a Warehouse Line of Credit with Groves Funding to fictitious borrowers based upon sham loan applications submitted to Regions by Groves Funding.  In turn, Regions wired approximately $2 million to Defendants Wilder and O'Connell who are principles, agents and/or employees of Best Title for the specific purpose of funding the purported loan transactions.  The specific loan closings never occurred.  Rather than return the money to Regions, Wilder and/or O'Connell combined approximately $1.3 million of the funds with nearly $1 million of Regions' money that Best Title received from Classic Title, via wire transfer, which was intended by Regions to fund two (2) purported mortgage loan transactions through Classic Title.  Wilder and O'Connell wired the nearly $2.3 million in diverted funds to the trust account of Defendant Rollings.  Rollings is a member of the Florida Bar, as well as the registered agent, shareholder and Licensed Title Agent for Best Title.

Rollings, in his capacity as attorney, represented Lynch and wrongfully transferred the $2.3 million from his trust account for the benefit of Lynch to fund Pyramid America's purchase of the assets of Pyramid II.  Pyramid America/Pyramid II and Defendant Lynch all knew that the monies funding the Pyramid Transaction were wrongfully diverted from the Regions' Warehouse Line of Credit.  Under the purchase agreement, the purchase price for Pyramid II's assets was $4.5 million.  Thus, the diverted funds from the Regions' Warehouse Line of Credit provided the down payment for the purchase, and Lynch received a Note from Pyramid America for the balance with a maturity date of November 1, 2007.

---

[2] The full extent of the scheme perpetrated by Defendants is presented in the Statement of Facts contained in the Amended Verified Complaint (Dkt. 39) filed simultaneously herewith and hereby incorporated herein.

On February 7, 2007, Lynch agreed to loan Pyramid America's principal, Toby L. Groves ("Groves"), $1.25 million so that Groves could pay down the Regions' warehouse line of credit. In return for the loan, Groves and the other principal of Pyramid America, Sam Burnett ("Burnett"), agreed to transfer to Lynch 51% of their respective membership units in Pyramid America. Additionally, repayment of the loan was secured by Groves' and Burnett's remaining membership units, to be held in escrow by Rollings. Under the terms of the loan, any default would require a transfer of the remaining membership units in Pyramid America/Pyramid II back to Lynch.

Regions has knowledge that a default demand was made under the Lynch loan and the transfer of membership units or other ownership interest to Lynch is imminent. Both the ownership interest in the Pyramid entities and the assets owned by Defendants need to be preserved as Defendants have obtained $2.3 million of Regions money and wrongfully diverted that money to obtain an ownership interest in the Pyramid Entities.

## II.  INJUNCTION ANALYSIS

To obtain a temporary restraining order and preliminary injunction against Pyramid America, Pyramid II and Lynch, Regions must show that: 1) It is substantially likely to succeed on the merits; 2) It will suffer irreparable injury if Defendants are not immediately enjoined; 3) the injury to Regions from Defendants' misconduct outweighs any impact that an injunction may cause Defendants; and 4) enjoining Defendants serves the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). Given the facts above and as further discussed below, Plaintiff can satisfy these legal requirements.

### A. There is a Substantial Likelihood that Regions Will Prevail on the Merits of its Claims

#### 1. Regions will prevail on its RICO and FDUPTA claims

Regions has claimed that Pyramid America, Pyramid II and Lynch have conspired to engage in a pattern of criminal activity that violates the Racketeer Influenced and Corrupt Organizations Act ("RICO), 18 U.S.C. § 1962(a)-(d). In order to establish a RICO violation, a pattern of racketeering activity consisting of two predicate acts related to one another within the last ten years must be shown. *Colonial Penn Ins., Co. v. Value Rent-A-Car, Inc.*, 814 F. Supp 1084, 1093 (S.D. Fla. 1992). Continuity of the illegal conduct must also be established. *Id*.

Here, the undisputed facts reveal that Pyramid America/Pyramid II and Defendant Lynch (along with the other Defendants) engaged in an illicit scheme to defraud Regions and benefit themselves. More than two related predicate acts based on wire fraud and bank fraud were taken by Defendants in furtherance of this scheme. Moreover, the issues present in the case *sub judice* span approximately two years, which is enough to constitute continuity under governing case law. *See San Jacinto Savings Association v. TDC Corp. of Florida*, 707 F. Supp. 1579 (M.D. Fla. 1989) (multiple acts of mail and wire fraud over two year period satisfies standard of continuity). Pyramid America/Pyramid II and Defendant Lynch have invested income derived from their loan kiting scam to establish or operate an enterprise and/or have acquired, maintained or established an interest in an enterprise. Furthermore, through their employment or association with said enterprise, Pyramid America/Pyramid II and Defendant Lynch have conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity and have done so in concert, thereby violating the RICO statutes.

Similarly, the facts show a clear pattern of misconduct in violation of the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA"), *Fla. Stat.* § 501.201 *et seq* An "unfair

practice is one that offends established public policy and one that is immoral, unethical, oppressive [or] unscrupulous." *See PNR, Inc. v. Beacon Property Mngt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). The actions undertaken by Pyramid America/Pyramid II and Defendant Lynch in the course and conduct of their loan kiting scheme provide a textbook case of the types of abuses that FDUTPA was meant to curb. Moreover, Lynch is just as liable for their illicit actions under FDUPTA as the corporate Defendants. *See Office of Attorney General v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598-99 (Fla. 1st DCA 2004). Accordingly, a likelihood of success on the merits has been shown.

### 2. Conversion

Under Florida law, "conversion occurs when a person asserts a right of dominion over chattel which is inconsistent with the right of the owner and deprives the owner of the right of possession." *Estate of Villanueva ex rel. Villanueva v. Youngblood*, 927 So. 2d 955, 959 (Fla. 2d DCA 2006). The deprivation can be permanent or for an indefinite time. *See Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858 (1948). Defendants Lynch, Pyramid America and Pyramid II wrongfully obtained $2,300,485.98 of Regions' money issued through the Warehouse Line of Credit. Lynch, Pyramid America and Pyramid II each asserted dominion over the property at issue by receiving monies funded under the Warehouse Line of Credit that were inconsistent with Regions' ownership therein. The money at issue is owed to Regions to which Regions had an immediate right to possess and which was obtained by Lynch, Pyramid America and Pyramid II through wrongful acts that deprived Regions of the same, thereby interfering with Regions' legal right to possession of the money at issue.

The money wrongfully obtained from Regions was sent via discrete and identifiable wire transfers. These transfers constitute a segregated fund, capable of being converted. *See Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So. 2d 1157, 1161 n.4 (Fla. 3d DCA 1984). The actions

taken by Lynch, Pyramid America and Pyramid II have wrongfully deprived Regions of its right to possess the funds, which were ultimately utilized to fund the Pyramid Transactions. In short, the facts establish a likelihood for success on this claim.

### 3.     Unjust Enrichment

The essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff; (2) the defendants' appreciation of the benefit; and (3) the defendants' acceptance and retention of the benefit under circumstances that make it inequitable to retain it without paying the value thereof. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006). The case *sub judice* provides a textbook example of the type of inequitable conduct that a claim for unjust enrichment was meant to rectify. Defendants have benefited from receiving over $2.3 million in ill-gotten funds, which were used to fund the Pyramid Transaction with Regions' money. Pyramid America, Pyramid II and Lynch have all appreciated the benefit of these funds and their retention of the same under the facts of the case would be wholly inequitable. These facts establish that Regions' claim for unjust enrichment is likely to succeed.

### 4.     Constructive Trust

Under Florida law courts may create a trust in "equity to prevent an unjust enrichment of one person at the expense of another as the result of (1) fraud, (2) undue influence, (3) abuse of confidence *or* (4) mistake in the transaction that originates the problem." *Silver v. Digges*, Case No. 6:06-CV-290-Orl-19DAB, 2006 WL 2024935, *3 (M.D. Fla. July 17, 2006) (emphasis in citation). A claim seeking the imposition of a constructive trust is not a traditional cause of action and need not be enumerated in a specific count. *See Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005). A constructive trust is the "formula through which the conscience of equity finds expression." *Id.* (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380 (1919)) (Cardozo J.) In applying a constructive trust the Court "is bound by no

unyielding formula. The equity of the transaction must shape the measure of relief." *Id*. Under the constructive trust doctrine, the rightful owner of misappropriated trust property may trace to the proceeds of such property and to whatever has been bought with the proceeds if it is capable of being substantially identified as having been acquired with the misappropriated property or funds. *Republic of Haiti v. Crown Charters, Inc.* 667 F. Supp 839, 843 (S.D. Fla. 1987).

In the present case, the funds at issue can be specifically traced to the Pyramid Transaction. This money was sent in readily identifiable wire transfers to fund the purchase of Pyramid II. The money was fraudulently obtained to fund this transaction and then converted into an ownership interest in the Pyramid Entities. Governing case law provides that Regions' "right of reclamation attaches to the property until it is barred by the superior equity of a bona fide purchaser for value without notice." *Id*. As such, Pyramid America, Pyramid II and Lynch are holders of the Pyramid Entities in constructive trust for its rightful owner – Regions. Based on the facts presented in this case, there is a likelihood of success on Regions' request for the equitable remedy of a constructive trust and the court should impose the same.

**B.     Regions Will Suffer Irreparable Injury if the Preliminary Injunction is Not Issued**

Defendants have caused and continue to cause irreparable injury to Regions through their elaborate scheme to defraud the bank of millions of dollars and refuse to return the funds. The funds at issue were converted to buy the assets of Pyramid II, which are now subject to an ownership stake owned by Regions. Moreover, Regions has knowledge that Lynch has sent Groves a notice of default of the terms of the February 7, 2007 loan, and Groves' and Burnett's remaining membership units in Pyramid America, held in escrow by Rollings, are subject to immediate transfer to Lynch. If and when this occurs, Lynch will own all of Pyramid America, and thus Pyramid II. Such a move would be analogous to the proverbial fox guarding the hen

house. Lynch has already sold his stake in Pyramid II once. If he were to sell the Pyramid Entities again, but this time to a bona fide purchaser, Regions could be forever estopped from asserting a claim over this property, which was converted and purchased with Regions' funds. Accordingly, irreparable harm can be shown. *See C.H. Robinson Worldwide, Inc. v. B&G Produce*, No. 8:06cv2172 T27EAJ, 2007 WL 41946, *2-3 (M.D. Fla. Jan. 4, 2007) (granting injunctive relief where potential dissipation of assets at issue constituted irreparable harm).

Both RICO and FDUTPA provide for injunctive relief under their statutory schemes. The purpose of the injunctive relief is to maintain the *status quo*. In cases where criminal conduct is at issue, the *status quo* can only be maintained by court action that preserves the assets wrongfully obtained; otherwise the injunctive remedies are nothing short of a paper tiger. Here, Regions' money has been converted to an ownership interest in the Pyramid Entities. Moreover, the transfer of Pyramid stock to Lynch, likewise further jeopardizes the assets of the very company at the center of the largest fraudulent transaction at issue in this case. It would be an affront to all sense of justice to allow Pyramid America, Pyramid II and Defendant Lynch to engage in such nefarious conduct and reap the spoils by allowing the assets at issue to be continuously used and put at risk to be transferred/conveyed once again.

**C. The Injury to Regions From Defendants' Misconduct Far Outweighs Any Impact that an Injunction May Cause Defendants.**

As shown above, Pyramid America/Pyramid II and Defendant Lynch have engaged in scheme that defrauded Regions of millions of dollars. Regions is requesting that the *status quo* be maintained to preserve whatever assets remain from the fraudulent transactions and to ensure that ownership and control of Pyramid America/Pyramid II does not change hands. An injunction is needed to preserve the position of the parties so that the Court may grant later relief. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302 (5th Cir. 1978) ("purpose

of injunction is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits"). Pyramid America, Pyramid II and Lynch have no legitimate right to dissipate the funds at issue or transfer ownership of the Pyramid Entities, as Regions has a constructive ownership in the operation at issue. To rule otherwise would jeopardize Regions efforts to recover that which is rightfully theirs.

### D. An Injunction Will Serve the Public Interest.

The public interest is served by the injunction and eventual return of the assets at issue. Regions Bank is a large institution that provides banking services to many clients throughout multiple states. However, Regions is not large enough to absorb the losses created from elaborate scams such as the one perpetrated by Pyramid America/Pyramid II and Defendant Lynch. If such actions went unchecked and no remedy provided, even an institution like Regions would eventually be forced to pass along the loss to consumers or ultimately close its doors in the face of rampant fraud. The public's interest certainly would not be served by such an occurrence. The preliminary injunction will maintain the *status quo* and preserve the assets of the Pyramid Entities, which in turn will help Regions continue providing excellent service to its customers. Accordingly, this factor weighs in favor of Regions and the Court should grant the requested relief.

### IV. CONCLUSION

This is not a case where Regions is attempting to compile and segregate a pool of funds for some undetermined future payment of damages. To the contrary, Regions is attempting to safeguard the very asset that its money was wrongfully used to purchase. If successful in this case, Omnicare will have a legal right to the assets of the Pyramid America/Pyramid II, which were purchased with Omnicare's money. The preliminary injunction will ensure that the *status*

12

*quo* is maintained. For the foregoing reasons, Regions Bank respectfully requests that the Court immediately enjoin Pyramid America, Pyramid II, and Lynch and enter an order holding:

    **1.** Entry of a Preliminary Injunction directing that Pyramid America/Pyramid II and Defendant Lynch:

    a. Immediately cease use of any funds associated or affiliated with, related to or derived from Regions bank and or the Pyramid Transactions, other than for normal operating costs but specifically prohibiting any dividends/distributions or other payouts to shareholders or members;

    b. Immediately cease all actions to transfer any ownership interest, shares, stocks or other indicia of ownership over Pyramid II/Pyramid America to Defendant Timothy Lynch or any other person or entity pending the outcome of this case;

    c. Perform a full accounting of all funds received from Regions Bank or Best Title whether directly or indirectly, including the disposition of such funds or the current location of the same, including account numbers for any bank accounts, certificate of deposits, mutual funds or any other financial vehicle in which these funds were placed;

    d. Provide a full accounting of all funds received whether directly or indirectly, from the sale of Pyramid America to Pyramid II including but not limited to any proceeds, payments, commissions or remunerations of any kind associated with the transaction and provide the disposition of such funds or the current location of the same, including account numbers for any bank accounts, certificate of deposits, mutual funds or any other financial vehicle in which these funds were placed;

    e. Provide Regions all contact and account information (including routing and account numbers) for the name and bank accounts of all banks holding or operating accounts and/ or trust accounts owned or operated by any of the Pyramid America/Pyramid II and Defendant Lynch to which any funds from Regions Bank and/or funds from the Pyramid Transaction were wired, placed or held;

    f. Appointing a receiver to protect and oversee the assets and operations of Pyramid America and Pyramid II.

    **[signatures appear on next page]**

Respectfully Submitted,

/s William P. Cassidy, Jr.
William P. Cassidy, Jr.
wcassidy@shutts.com
Florida Bar No. 0332630
SHUTTS & BOWEN LLP
100 S. Ashley Drive, Suite 1500
Tampa, FL  33602
(813) 229-8900, (813) 229-8901 (facsimile)
Attorneys for Regions Bank

W. Reese Willis III
wrw@mccallaraymer.com
Georgia Bar No. 767067
Lisa K. Rose
lkr@mccallaraymer.com
Georgia Bar No. 614204
MCCALLA RAYMER, LLC
McCalla Raymer, LLC
Six Concourse Parkway
Suite 3200
Atlanta, GA  30328
Telephone:  (678) 281.6500
Fax:  (678) 277-4934
Admitted pro hac vice
Attorneys for Regions Bank

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 12, 2008, I electronically filed Plaintiff Regions Bank's AMENDED MOTION FOR PRELIMINARY INJUNCTION with the Clerk of the Court by using the CM/ECF system and that the notice of electronic filing was sent via U.S. Mail to the following:

| | |
|---|---|
| Gary Brown, Esquire<br>gbrown@kelleykronenberg.com<br>Christopher J. Volk, Esquire<br>cvolk@kelleykronenberg.com<br>Kelley Kronenberg Gilmartin Fichtel & Wander, P.A.<br>8200 Peters Road<br>Suite 4000<br>Fort Lauderdale, FL  33324<br>Business:       (954) 370-9970<br>Facsimile:      (954) 382-1988 | Edward O. Savitz, Esquire<br>esavitz@bushross.com<br>Anne-Leigh Gaylord Moe, Esquire<br>amoe@bushross.com<br>Bush Ross, P.A.<br>1801 N. Highland Avenue<br>Tampa, FL  33602<br>Business:       (813) 224-9255<br>Facsimile:      (813) 223-9620 |
| Michael J. Corso, Esquire<br>michael.corso@henlaw.com<br>Henderson, Franklin, Starnes & Holt<br>P.O. Box 280<br>Fort Myers, FL  33902-0280<br>Business:       (239) 344-1170<br>Facsimile:      (239) 344-1200 | Leon S. Jones, Esquire<br>Paul Owens, Esquire<br>Jones & Walden, LLC<br>21 Eighth Street, NE<br>Atlanta, GA  30309<br>Business:       (404) 564-9300<br>Facsimile:      (404) 564-9301 |

/s/ William P. Cassidy, Jr.
Attorney

15