**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**REGIONS BANK, an Alabama banking corporation, d/b/a REGIONS FUNDING,**

**Plaintiff,**

**v.**

**TIMOTHY LYNCH, individually, PYRAMID II JANITORIAL SUPPLIES AND EQUIPMENT, INC., a Florida corporation, PYRAMID AMERICA, LLC, a Florida limited liability company, HARVEY ROLLINGS, individually, STORMY WILDER, individually, and BARBARA O'CONNELL, individually,**

**Case No. 2:08-cv-31-FtM-34SPC**

**Defendants.**

_______________________________________/

**RESPONSE OF DEFENDANTS TIMOTHY LYNCH, PYRAMID II JANITORIAL SUPPLIES AND EQUIPMENT, INC., AND PYRAMID AMERICA, LLC TO PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION**

Defendants Timothy Lynch, Pyramid II Janitorial Supplies and Equipment, Inc., and Pyramid America, LLC ("these Defendants") respond to Plaintiff's Amended Motion for Preliminary Injunction [Docket no. 43] as follows.

## I. Introduction and procedural history.

The instant lawsuit is the second filed by Regions Bank arising from the fraudulent activities of Regions's former mortgage broker Toby Groves. As is discussed in Regions's original motion for a temporary restraining order [Docket no. 2 at 2, n.1] and as the Court noted in its order of January 18 denying that motion [docket no. 4], Regions previously sued these defendants and numerous other parties in the Northern District of Georgia, alleging a vast

conspiracy and RICO enterprise to defraud Regions. Never in that suit did Regions request preliminary injunctive relief. (Order of January 18 at 3–4.) After Regions's claims in the Georgia lawsuit against these Defendants were dismissed sua sponte by that court for lack of jurisdiction, Regions re-filed its claims in this Court, narrowing the cast of defendants but still alleging a broad conspiracy and racketeering enterprise.

**II. Facts.**

For the purposes of Regions's claims against these Defendants, its theory is relatively simple. Toby Groves operated Groves Funding Corporation, which was essentially a mortgage broker. (See Complaint ¶¶ 1, 14.) As such, Groves had access to a warehouse line of credit from Regions, through which Groves Funding would borrow money to fund residential loan closings. (*Id.* ¶ 14). Presumably, such loans were to be originated by Groves Funding but immediately sold to other lenders, so as to repay the warehouse line. Groves, it appears, took to abusing the warehouse line of credit. Regions alleges that Groves set up "fictitious" residential loans in order to draw on the warehouse line to obtain funds for his own purposes. (See Amended Motion for Preliminary Injunction [Docket no. 43] (hereinafter "Amended Motion") at 5.) Regions further alleges that Groves "kited" the loans (*Id.* at 5; Compl. ¶ 1), which apparently means that Groves repeatedly took out fraudulent loans to pay off earlier fraudulent loans, a process that may have escaped immediate detection by Regions.

Regions alleges that one of the improper purposes for which Groves used the warehouse line was the acquisition of a janitorial supply business in Fort Myers, Pyramid II Janitorial Supplies and Equipment, Inc. ("Pyramid II"), a Florida corporation owned by Defendant Timothy Lynch ("Lynch"). Groves became interested in purchasing the business in 2006 and began discussions with Lynch. (Compl. ¶ 26.) The discussions led to an asset purchase

agreement under which Groves set up a new corporation, Pyramid America, LLC ("Pyramid America") which would purchase the assets of Pyramid II for $4.5 million. (See generally *Id*., Ex. 3, part 1, at 5–8.) This purchase price was to be paid by a $25,000 cash down payment, an additional $2.1 million cash at closing, and $2.375 million secured loan by Pyramid II to Pyramid America. (*Id.*, Ex. 5.) The sale closed on or about September 1, 2006. (*Id.* ¶ 44.)

Regions alleges that in the days leading up to the closing, Groves falsified loan documents for four fictitious residential loan closings on his warehouse line, the funds from which he applied to the $2.1 million due at closing. (*Id.* ¶¶ 39–40.) Crucial to Regions's claims against these Defendants is its allegation, strongly disputed by these Defendants, that before the closing, Lynch was aware of Groves's plan to abuse the warehouse line. (*Id.* ¶¶ 32, 35.) Based on discovery and court filings in the Georgia litigation, it appears that Regions relies heavily, if not solely, on Groves's expected testimony in making this assertion.

It appears that Groves intended to borrow from other sources to repay the approximately $2.1 million obtained on the warehouse line for the Pyramid closing but was unable to do so. Regions alleges that prior to closing, Lynch had orally agreed to subordinate Pyramid II's security interest in order to make it easier for Groves to accomplish this refinancing. (*Id.* ¶ 35.) Again, these defendants deny that there was any such agreement (See these Defendants' Answer ¶ 35), although it is expected that the evidence will show that Groves subsequently asked Lynch for such a subordination but was refused. At any rate, when, by early 2007, it became clear that Groves would default on the loan to Pyramid II, Groves and Lynch entered into a new agreement whereby Lynch extended the maturity date on the loan to December 31, 2007, and loaned Groves an additional $1.25 million, taking back a security interest in Pyramid II's stock and assuming

management of the company. (Complaint, Ex. 6.) When Groves defaulted on this loan, Lynch foreclosed on his security interest and took back the remaining shares of Pyramid America.

Regions, in addition to stating various RICO, conspiracy, and fraud claims against these Defendants, also seeks preliminary injunctive relief. The precise relief it is requesting is somewhat unclear. In the introduction to its Amended Motion, Regions says that it seeks

> to preliminarily restrain . . . Pyramid II, . . . Pyramid America, . . . and . . . Lynch . . . from transferring/conveying any ownership rights or selling any assets of Pyramid America or Pyramid II (collectively the "Pyramid Entities") and an order prohibiting transfer of funds (other than normal operating costs but specifically excluding any dividends/distributions or other payouts to shareholders or members) out of accounts owned by the Pyramid Entities that contain or did contain any monies obtained from Regions through Best Title Solutions, Inc. ("Best Title").

(Amended Motion at 1–2.) Later in its motion Regions asks the Court to enter a preliminary injunction

> directing that Pyramid America, Pyramid II and Defendant Lynch:
>
> a. Immediately cease use of any funds associated or affiliated with, related to or derived from Regions bank and or the Pyramid Transactions, other than for normal operating costs but specifically prohibiting any dividends/distributions or other payouts to shareholders or members;
>
> b. Immediately cease all actions to transfer any ownership interest, shares, stocks or other indicia of ownership over Pyramid II/Pyramid America to Defendant Timothy Lynch or any other person or entity pending the outcome of this case;
>
> c. Perform a full accounting of all funds received from Regions Bank or Best Title whether directly or indirectly, including the disposition of such funds or the current location of the same, including account numbers for any bank accounts, certificate of deposits, mutual funds or any other financial vehicle in which these funds were placed;
>
> d. Provide a full accounting of all funds received whether directly or indirectly, from the sale of Pyramid America to Pyramid II including but not limited to any proceeds, payments, commissions or remunerations of any kind associated with the transaction and provide the disposition of such funds or the current location of the same, including account numbers

for any bank accounts, certificate of deposits, mutual funds or any other financial vehicle in which these funds were placed;

e. Provide Regions all contact and account information (including routing and account numbers) for the name and bank accounts of all banks holding or operating accounts and/or trust accounts owned or operated by any of the Pyramid America/Pyramid II and Defendant Lynch to which any funds from Regions Bank and/or funds from the Pyramid Transaction were wired, placed or held; [and]

f. Appointing a receiver to protect and oversee the assets and operations of Pyramid America and Pyramid II.

(Amended Motion at 4; see also Amended Motion at 13.) Regions is thus asking for six categories of preliminary injunctive relief: 1) prohibiting Lynch from transferring any interest in Pyramid II or Pyramid America (Amended Motion at 1 and at 4, ¶ b); 2) prohibiting Pyramid America from transferring any of its assets (*Id.*); 3) prohibiting any of these Defendants from transferring any funds out of any bank account that has ever contained any Regions money obtained through Best Title, essentially freezing any such account, except for "normal operating costs" (*Id.* at 1 and at 4, ¶ a); 4) prohibiting Lynch from foreclosing on his security interest in Pyramid America by taking back the stock pledged by Groves (*Id.* at 1and at 4, ¶ b) and (b)[1]; 5) performing an "accounting" to determine the disposition of the funds traceable to Regions (*Id.* at 4, ¶¶ c, d, and e); and 6) appointing a receiver for Pyramid America and Pyramid II (*Id* at 4, ¶ f). These Defendants oppose this request.

## III. Discussion.

> A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. . . . In this Circuit, [a] preliminary injunction is an extraordinary

[1] This request is moot. The evidence will show that this foreclosure occurred before these Defendants were servedw with process in this case.

> and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion" as to each of the four prerequisites.

*Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).

At this stage of the briefing, before any discovery has been conducted, this memorandum will focus on Regions's entitlement to injunctive relief at all. Regions cannot demonstrate that it has any likelihood of success on the merits of its claims for injunctive relief because it cannot demonstrate that it is without an adequate remedy at law. Similarly, it cannot demonstrate that it will suffer irreparable injury in the absence of a preliminary injunction. Although this showing is sufficient to deny Regions's request for a preliminary injunction, these Defendants stress that they vigorously dispute Regions's factual claims, namely that Lynch participated in any conspiracy or racketeering enterprise with Toby Groves. Again, these Defendants note that the linchpin of Regions's case is its claim that before buying Pyramid, Groves fully briefed Lynch on his plans to defraud Regions, a theory that relies on Groves's own testimony and that these Defendants categorically deny. These Defendants ask that the Court hold an evidentiary hearing on Regions's motion before granting any preliminary injunction. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998) ("where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held" before a preliminary injunction is issued.)

**A. Regions cannot demonstrate that it has no adequate remedy at law, much less that it will suffer irreparable injury without a preliminary injunction.**

"It is axiomatic that equitable relief is only available where there is no adequate remedy at law; cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity." *Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1527 (11th Cir. 1994). In this case, Regions is simply suing to recover money that it claims was misappropriated by Groves.

Nothing in the complaint explains why Regions would not be fully compensated by an award of monetary damages. On the contrary, Regions has pleaded at least six different legal theories (four RICO counts, the Florida Deceptive and Unfair Trade Practice Act, and common-law conversion) on which it bases claims for monetary damages. Regions does not allege any harm other than the loss of money, which is not a ground for injunctive relief.

In its amended motion, Regions claims that if Lynch "were to sell the Pyramid Entities again, but this time to a bona fide purchaser, Regions could be forever estopped from asserting a claim over this property . . . ." (Amended Motion for Preliminary Injunction at 11.) This claim does not demonstrate irreparable injury. Regions is simply arguing that if these Defendants were to dissipate their assets, it might not be able to collect a money judgment. Even if true, this is irrelevant. "The test of the inadequacy of a remedy at law is whether a judgment could be obtained, not whether, once obtained it will be collectible." *Rosen*, 21 F.3d at 1531 (citations omitted). Moreover, Regions's assertion that a sale of Pyramid assets could "estop" Regions from collecting is incorrect. If Lynch were to sell his interest in Pyramid America, it would presumably be for value and net assets against which a judgment could be collected. If it were not, Regions could pursue the purchaser for a fraudulent transfer.

Indeed, like the plaintiff in *Rosen*, what Regions actually seeks is a prejudgment attachment. As in *Rosen*, "the purpose and effect of the [proposed] injunction is to provide security for performance of a future order which may be entered by the court," *Id.* at 1530 (citations omitted), and as in *Rosen*, the Court should "look past the terminology to the actual nature of the relief requested," *Id.*, to see that Plaintiff is simply requesting that the Court freeze a pot of money so that it will be available for execution if and when Plaintiff recovers a money judgment. In *Rosen*, the Eleventh Circuit explained at length that this is not a proper use of a

preliminary injunction. Instead, held the Court, "[Federal] Rule [of Civil Procedure] 64, and not Rule 65, . . . provides the standard for evaluating a request for preliminary injunctive relief that is, in reality, no more than a request for prejudgment attachment." *Id.* Rule 64 directs federal courts to look to the law of the forum state concerning the availability of prejudgment collection remedies. Regions has satisfied none of the requirements of the applicable Florida statutes, Fla. Stat. §§ 76.04–05, governing prejudgment attachment.

**B. Regions cannot prevail on its constructive trust claim.**

Regions cites an unpublished decision of this Court, *C.H. Robinson Worldwide, Inc. v. B&G. Produce, Inc.*, no. 8:06-CV-2172-T-27EAJ, 2007 WL 41946, 2007 U.S. Dist. LEXIS 295 (M.D. Fla. Jan. 3, 2007), in support of its position that a preliminary injunction is an appropriate vehicle to prevent a defendant from "dissipating" assets. *Robinson*, however, is distinguishable because it involved a claim pursuant to a statutory trust under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq*. While the instant case is not a PACA case, Regions attempts to bootstrap its damages claim into an equitable claim through trust law, asking the Court to impose a constructive trust on these Defendants. (See Amended Motion at 9–10.)[2]

Regions is not entitled to imposition of a constructive trust, however, because a constructive trust is an equitable remedy, and Regions is not entitled to equitable relief. A constructive trust is only available if the plaintiff has no adequate remedy at law. *Bender v. Centrust Mortgage Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995) (constructive trust remedy available "unless there is an adequate remedy at law."); *Mitsubishi Int'l Corp. v. Cardinal Textile Sales*, 14 F.3d 1507, 1518 (11th Cir. 1994) (under Georgia law, "constructive trusts are

---

[2] Although Regions's complaint does not request imposition of a constructive trust, its proposed amended complaint does. In briefing this issue, these Defendants do not consent to Regions's proposed amendment of its complaint.

inherently equitable in nature[,] and . . . equitable relief is available only in the absence of an adequate remedy at law."); *Rosen v. Rosen*, 167 So. 2d 70, 72 (Fla. 3d DCA 1964) (equity "jurisdiction embraces authority in a proper case to impress a resulting or constructive trust on property, assuming that no adequate remedy exists at law . . . .") As discussed above, if Regions prevails, it has an adequate remedy at law in the form of a money judgment.

Regions cannot seriously argue that Pyramid II, a janitorial supply company that Regions has never owned, is of some unique value to it. Regions simply wants to recover money that it claims was misappropriated for the purchase of the business. Once again, Regions's claim of possible irreparable injury simply boils down to a request to freeze these Defendants' assets so that it will be easier to collect a judgment (which these Defendants deny Regions is entitled to). Phrasing its claim as one for a constructive trust does not change this reality and does not change the fact that Regions is not entitled to this relief.

**C. Regions is not entitled to an accounting or appointment of a receiver.**

Regions's amended motion asks the Court to order these Defendants to "[p]erform a full accounting of all funds received from Regions" (Amended Motion at 4, ¶¶ c and d) and to provide certain bank account information concerning the disputed funds (*Id.* at 4, ¶ e). This is not the purpose of the common-law equitable remedy of an accounting. "Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate." *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990). Regions has alleged no fiduciary relationship and, as shown above, has an adequate remedy at law. In reality, Regions is attempting to use a preliminary injunction as an information-gathering tool. If it contends that the

requested information is necessary to prove its case, it should seek it in discovery and does not need the aid of a preliminary injunction to do so.[3]

Turning to Regions's request for a receiver, a district court's decision whether to appoint a receiver under Federal Rule of Civil Procedure 66 is a matter of federal law. *Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289 (11th Cir. 1998).

> Appointing a receiver, however, is an extraordinary remedy and, although no precise formula exists for determining when a court should resort to appointing a receiver, several factors should be considered: (1) whether fraudulent activity has or will occur, (2) the validity of the claim, (3) the danger that property will be lost or diminished in value, (4) inadequacy of legal remedies, (5) availability of less severe equitable remedy, and (6) the probability that a receiver may do more harm than good.

*Clough Mktg. Servs. v. Main Line Corp.*, 2007 U.S. Dist. LEXIS 10260, *2 (N.D. Ga. Feb. 13, 2007) (citations omitted). Regions's motion does not explain why it contends a receiver is necessary in this case. Applying the first factor in *Clough Marketing*, although Regions has alleged that it has been defrauded, these Defendants deny participation in any fraud, and Regions has shown no reason to think that fraudulent activity might continue in the future. As to the second factor, again, these Defendants deny that Regions has any valid claim against them. As to the third factor, Regions has articulated no reason other than its own conjecture as to why any property might be lost or diminished in value. As discussed above, Regions clearly has an adequate remedy at law (Factor 4), and Regions has itself requested other, less severe equitable remedies (Factor 5), although it is not entitled to them. As to Factor 6, these Defendants submit that the cost and inconvenience of a receivership would far outweigh any possible benefit. The Court should deny Regions's request for an accounting or appointment of a receiver.

[3] These Defendants do not concede that this information is discoverable under Federal Rule of Civil Procedure 26. Indeed, the requested information appears more appropriate for post-judgment discovery.

**D. The requested injunction is impermissibly vague and overbroad.**

Federal Rule of Civil Procedure 65(d) requires that a preliminary injunction "describe in reasonable detail . . . the act or acts restrained or required." "Under this rule, an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998). Regions's proposed injunction does not comply with Rule 65(d). Regions asks the Court essentially to freeze some of these Defendants' assets "other than for normal operating costs but specifically prohibiting any dividends/distributions or other payouts to shareholders or members" (Amended Motion at 1; see also Amended Motion at 4, ¶ a.) Aside from the ambiguous phrasing of this entire sentence, it is not clear what "normal operating costs" means. An injunction using this phrasing could potentially paralyze these Defendants' business and be a nightmare to enforce. These Defendants would have to analyze every transfer of funds out of their bank accounts to determine whether the transaction is a "normal operating cost." For each such transaction, these Defendants would have to choose between risking contempt and moving the Court for clarification of the injunction, which would amount to the Court micromanaging the business and be a complete waste of judicial resources.

Finally, Regions asks the Court to freeze any bank account "that contain[s] *or did contain* any monies obtained from Regions . . ." (Amended Motion at 1) (emphasis added). There is no logical reason that Regions should be entitled to restrain these Defendants' use of funds in an account that at some time in the past happened to contain money from Regions. The proposed injunction is hardly "narrowly tailored to fit specific legal violations," *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002), as preliminary injunctions must be.

**IV. Conclusion.**

For the foregoing reasons, these Defendants respectfully request that Plaintiff's motion be denied.

Dated: March 31, 2008

s/ Paul Owens

Leon S. Jones
ljones@joneswalden.com
Paul Owens
powens@joneswalden.com
Admitted pro hac vice
JONES & WALDEN, LLC
21 Eighth Street, N.E.
Atlanta, GA 30309
Ph: (404) 564-9300
Fax: (404) 564-9301

Edward O. Savitz
Florida Bar No.: 0183867
esavitz@bushross.com
Anne-Leigh Gaylord Moe
Florida Bar No.: 018409
amoe@bushross.com
BUSH ROSS, P.A.
1801 N. Highland Avenue
Tampa, FL 33602
Ph.: (813) 224-9255
Fax: (813) 223-9620
Attorneys for Defendants Timothy Lynch, Pyramid II Janitorial Supplies and Equipment, Inc., and Pyramid America, LLC

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on March 31, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

s/ Paul Owens
Attorney