**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

REGIONS BANK, an Alabama banking corporation, d/b/a REGIONS FUNDING,

Plaintiff,

v. Case No. 2:08-cv-31-FtM-34SPC

TIMOTHY LYNCH, individually, PYRAMID II JANITORIAL SUPPLIES AND EQUIPMENT, INC., a Florida corporation, PYRAMID AMERICA, LLC, a Florida limited liability company, HARVEY ROLLINGS, individually, STORMY WILDER, individually, and BARBARA O'CONNELL, individually,

Defendants.
____________________________________/

**O R D E R**

**THIS CAUSE** is before the Court on Plaintiff's Amended Motion for Preliminary Injunction (Dkt. No. 43; Motion), filed on March 12, 2008.[1] In support of this Motion, Plaintiff relies on the verified allegations contained in the Verified Complaint (Dkt. No. 1) as well as the documentary evidence attached to it. See Motion at 2; Order (Dkt. No. 62) at 1.[2] Defendants oppose the Motion, see Response of Defendants Timothy Lynch, Pyramid II

---

[1] In the Motion, Plaintiff Regions Bank (Regions) seeks preliminary injunctive relief only against Defendant Timothy Lynch (Lynch), Pyramid II Janitorial Supplies and Equipment, Inc. (Pyramid II), and Pyramid America, LLC (Pyramid America). See Motion at 1 n.1.

[2] At a status conference on April 10, 2008, the parties agreed to proceed with a hearing on the Motion based on the Verified Complaint (Dkt. No. 1), which, at that time, was the operative pleading. See Order (Dkt. No. 62) at 1. The Court notes, however, that Plaintiff's Motion for Leave to Amend Complaint (Dkt. No. 50) was granted shortly before the scheduled hearing. See Order (Dkt. No. 72). Nonetheless, based on the parties' agreement, which Plaintiff's counsel confirmed at the hearing on the Motion, the Court proceeded with the hearing based on the Verified Complaint.

Janitorial Supplies and Equipment, Inc., and Pyramid America, LLC to Plaintiff's Amended Motion for Preliminary Injunction (Dkt. No. 55; Response), and filed the Declaration of Linda Achilles (Dkt. No. 69; Achilles Decl.) in support of their Response. With the Court's permission, Plaintiff filed a reply to Defendants' Response. See Regions' Reply Brief in Support of Its Amended Motion for Preliminary Injunction (Dkt. No. 70; Reply). On April 24, 2008, the Court heard oral argument on the Motion.[3] Having reviewed the pleadings and file as well as considered the arguments of counsel, Plaintiff's Motion is now ripe for resolution.

## I. Background Facts[4]

Groves Funding and Regions entered into an arrangement allowing Groves Funding to use a warehouse line of credit for the purpose of closing certain residential mortgage loans. See Verified Complaint ¶¶ 12, 14. Toby Groves is a principal of Groves Funding. See id. ¶ 2. In order to facilitate this arrangement, Regions entered into a Master Bailment Agreement with Barbara O'Connell of Best Title Solutions, Inc. (Best Title), "whereby Best Title agreed to act as a bailee for the benefit of Regions for the purpose of closing designated residential mortgage loans originated by Groves Funding." Id. ¶ 12.

---

[3] At the status conference on April 10, 2008, the parties agreed to a bifurcated hearing of the issues raised in the Motion. See Order (Dkt. No. 62) at 1. Thus, on April 24, 2008, the Court heard oral argument on "whether Plaintiff has established the following: (1) a substantial threat of irreparable injury if the injunction is not granted, (2) that the threatened injury to Plaintiff outweighs the harm an injunction may cause the Defendants, and (3) that granting the injunction would not disserve the public interest." Id. at 2.

[4] For the sole purpose of resolving Plaintiff's Motion and providing context to this dispute, the Court makes the following factual findings based on the information provided by the parties. This recitation of the facts should not be interpreted as a final decision regarding any disputed issues of fact.

Additionally, Regions entered into a similar bailment arrangement with Classic Title Agency, LLC (Classic Title). See id. ¶ 40.

Pyramid II is a janitorial supply company that has been in business for more than twenty-eight years. See Achilles Decl. ¶¶ 3, 9. In April 2006, Groves became interested in purchasing the assets of Pyramid II from Lynch, the sole officer, shareholder, and director of the company. See Verified Complaint ¶ 26 & Ex. 6. Consequently, in May 2006, Lynch agreed to sell the assets of Pyramid II to Groves for the amount of $4.5 million. See id. ¶ 31. For purposes of effectuating this sale, Groves formed Pyramid America, LLC, in August 2006.[5] See id. ¶ 30. Groves and Samuel Burnett were the sole members of this limited liability company with Groves owning 100 membership units of Class A shares and Burnett owning 200 membership units of Class B shares in the company. See id. Ex. 6.

The closing for the Pyramid II asset acquisition was scheduled for September 1, 2006, and the parties executed the closing agreement and closing statement on that date. See id. ¶ 44 & Ex. 3. These documents identified Pyramid II as the seller and Pyramid America as the buyer. See id. Ex. 3. They further provided that in exchange for conveying the assets and name of Pyramid II Janitorial Supplies and Equipment, Pyramid America was to execute a promissory note in the amount of $2,375,000.00 as well as provide $2,135,554.00 in cash to Pyramid II. See id. Additionally, the closing agreement specifically stated that, if Pyramid America defaulted on the promissory note, then all assets transferred to Pyramid America would revert to Pyramid II. See id.

---

[5] Contrary to this allegation, the documents attached to the Verified Complaint show that Pyramid America was formed by Samuel Burnett and not Groves. See Verified Complaint Ex. 6. However, for purposes of resolving the Motion, this discrepancy is not important.

As a result of this agreement, Burnett, as the managing member of Pyramid America, executed a promissory note on September 1, 2006, for the amount of $2,375,000.00 – payable in two installments on November 15, 2006, and on November 1, 2007. See id. The note was secured by a security agreement for the assets of Pyramid II, which was executed by Burnett, on behalf of Pyramid America, as well as a personal guarantee by Groves. See id. ¶ 51 & Ex. 3. On September 6, 2006,[6] Best Title wired $2,300,485.96 to the escrow account of Harvey Rollings. See id. ¶¶ 21, 47 & Ex. 4. The sum represented funds provided by Regions, pursuant to the direction of Groves Funding, to Best Title and Classic Title for the purpose of closing certain residential mortgage loans.[7] See id. ¶¶ 17, 40-41, 47. Rollings, on behalf of Pyramid America, transferred $2,134,554.00 to Pyramid II to satisfy the cash requirement part of the asset purchase agreement.[8] See id. ¶¶ 48, 50.

Several months later, Groves asked Lynch to provide additional financing for the Pyramid II asset acquisition. See id. ¶ 53 & Ex. 6. Therefore, on February 7, 2007, Groves and Burnett, individually and on behalf of Pyramid America, entered into an agreement with Lynch, individually and on behalf of Pyramid II. See id. In this agreement, Lynch, on behalf of Pyramid II, agreed to extend the maturity date on the previously executed promissory note

---

[6] Due to an apparent clerical error, it is alleged in the Verified Complaint that this transfer occurred on September 6, 2007. See Verified Complaint ¶ 21.

[7] According to Plaintiff, "Groves' plan was to misappropriate funds advanced from the Regions' Warehouse Line of Credit as a down payment for the purchase of Pyramid II and give Lynch a note for the balance. Groves then planned to seek refinancing from a bank to quickly pay back the line of credit." Verified Complaint ¶ 27. Plaintiff alleges that Lynch was aware of Groves' plan. See id. ¶¶ 28, 32.

[8] Although Plaintiff alleges in the Verified Complaint that the funds were transferred to Lynch, Plaintiff asserted, at the hearing on the Motion, that the funds were received by Pyramid II. See Verified Complaint ¶¶ 48, 50.

and to require payment of the full amount of the note (rather than two installment payments) on December 31, 2007. See id. Additionally, Lynch, individually, agreed to loan Groves the sum of $1.25 million. See id. In exchange for this consideration, Groves agreed to execute a promissory note for $1.25 million, which was also to be repaid by December 31, 2007, and secured by a stock pledge agreement wherein Burnett and Groves pledged their membership units in Pyramid America to Lynch in the event of default on the promissory note. See id. ¶ 53 & Exs. 6 & 7. As further consideration for the transaction, Groves and Burnett agreed to direct Pyramid America to execute an employment agreement with Lynch wherein Lynch would "be the party primarily responsible for the day to day management and business decisions of PYRAMID AMERICA, LLC from and after the date of the Employment Agreement." Id. Ex. 6. Furthermore, Burnett and Groves agreed to transfer 51% of their interest in Pyramid America to Lynch. See id. ¶ 54 & Ex. 6. Upon satisfaction of the original promissory note as well as this subsequent promissory note, Lynch agreed to transfer all of his interest in Pyramid America back to Groves and Burnett. See id. Ex. 6. At the time of this agreement, Lynch was still the sole director and officer of Pyramid II, and Burnett and Groves were the sole members of Pyramid America. See id.

Groves and Burnett failed to satisfy the promissory note, and, as a result, on January 1, 2008, Lynch notified Groves and Burnett that, pursuant to the stock pledge agreement, he was going to direct the escrow agent (Rollings) to deliver the outstanding shares in Pyramid America to him and that, upon such delivery, Lynch would "become the sole Member shareholder in said LLC henceforth." Id. Ex. 11; see also id. ¶¶ 60-61. Lynch then directed Rollings to deliver the outstanding shares in Pyramid America to him, and, as the

parties conceded at the hearing, Lynch has been the sole member of Pyramid America since January 2008. See id. ¶ 62 & Ex. 12.

On June 8, 2007, Plaintiff filed suit against Defendants,[9] as well as several others, in the United States District Court for the Northern District of Georgia. See Order (Dkt. No. 4) at 3. On December 10, 2007, the court in that case issued an order to show cause directing Plaintiff to show cause as to why the complaint should not be dismissed, in part, for lack of personal jurisdiction. See Order (Dkt. No. 161) in Case No. 1:07-cv-1333-BBM. A show cause hearing was held on December 17, 2007, and the court subsequently entered an order dismissing, among others, Pyramid America, Pyramid II, and Lynch. See Order (Dkt. No. 175) in Case No. 1:07-cv-1333-BMM. After the hearing, Plaintiff voluntarily dismissed the claims against Rollings and Wilder. See Stipulation of Dismissal (Dkt. Nos. 176, 178) in Case No. 1:07-cv-1333-BBM. Plaintiff did not file a motion for preliminary injunctive relief in the action in the Northern District of Georgia and that action is still pending. See Order (Dkt. No. 4) at 3-4.

On January 18, 2008, Plaintiff filed the Verified Complaint against Defendants, alleging violations of the civil RICO statute and the Florida Deceptive and Unfair Trade Practices Act as well as claims for conversion, accounting, fraud, breach of fiduciary duty, negligence, conspiracy, and receivership. See Verified Complaint ¶¶ 67-159. On that same day, Plaintiff also filed a motion seeking a temporary restraining order and preliminary injunction. See Motion for Temporary Restraining Order, Preliminary Injunction and

---

[9] With the exception of O'Connell, all of the Defendants named in this action were included as Defendants in the suit filed in the Northern District of Georgia.

Expedited Discovery (Dkt. No. 2; Motion for TRO). The Court denied the Motion for TRO to the extent that it sought a temporary restraining order, finding that the motion failed to comply with the Court's Local Rules as well as the Federal Rules of Civil Procedure and that Plaintiff failed to show that it would suffer immediate and irreparable harm if the restraining order were not granted. See Order (Dkt. No. 4) at 2-5. The Court also took the motion under advisement to the extent that it sought preliminary injunctive relief pending the filing of proof of service in accordance with Local Rule 4.05(b)(6). See Order (Dkt. No. 4) at 5.

On March 7, 2008, the Court entered an Order (Dkt. No. 37) requesting that Plaintiff inform the Court as to the status of the Motion for TRO as Plaintiff had delayed in filing proof of service with the Court. In response to this Order, Plaintiff filed the Motion, which rendered the Motion for TRO moot. See Order (Dkt. No. 46). In the Verified Complaint as well as the Motion, Plaintiff seeks preliminary injunctive relief precluding Defendants from "dissipating and/or transferring assets rightfully belonging to Regions," including any stocks or shares in Pyramid America or Pyramid II, as well as "engaging in the unfair and deceptive trade practices set forth above." Verified Complaint at 15-18, 20; see also Motion at 1, 4. Specifically, in the Motion, Plaintiff requests the following relief: (1) "preliminarily restrain [Defendants] from transferring/conveying any ownership rights or selling any assets of Pyramid America or Pyramid II" and (2) enter an "order prohibiting transfer of funds (other than normal operating costs but specifically excluding any dividends/distributions or other payouts to shareholders or members) out of accounts owned by [Pyramid America or Pyramid II] that contain or did contain any monies obtained from Regions through Best Title Solutions, Inc." Motion at 1-2. Plaintiff also requests that the Court order an accounting of

all funds received, directly or indirectly, from Plaintiff or Best Title as well as all funds received, directly or indirectly, from the Pyramid II asset acquisition, and appoint a receiver to oversee the operations of Pyramid America and Pyramid II. See id. at 4. Defendants oppose these requests.

## II. Summary of the Argument

Plaintiff contends that it is entitled to this preliminary injunctive relief because it can establish that its funds were used, in part, to allow Groves and Burnett, as the sole members of Pyramid America, to obtain an ownership interest in the assets of Pyramid II. See Motion at 2. As Plaintiff's funds were allegedly fraudulently obtained, it maintains that it is the rightful owner of Pyramid America and/or Pyramid II and a pre-judgment constructive trust should be placed over Pyramid America and Pyramid II to protect Plaintiff's interest in those entities. See id. Plaintiff asserts that this relief is necessary in order to "prevent dissipation and to ensure that no ownership transfer occurs between [Pyramid America and/or Pyramid II] or any third party." Id. at 3. Plaintiff further suggests that it will suffer irreparable harm if the injunction is not entered because "the assets at issue, including the ownership interests in Pyramid II/Pyramid America are capable of being dissipated, transferred, conveyed or otherwise wasted in an effort to continue avoiding repaying Regions." Id. It explains that irreparable harm is imminent because Lynch has made a demand for Groves' and Burnett's ownership interest in Pyramid America, and, Regions' ability to maintain a claim on Pyramid America's assets will be severely restricted if Lynch sells his interest to a bona fide purchaser. See id. Its assertion of imminent harm is further based on the fact that

Lynch has already sold Pyramid II once, which, according to Plaintiff, establishes the propensity that he will do it again. Id. at 10-11.

On the other hand, Defendants assert that Plaintiff is not entitled to a preliminary injunction because it cannot show that it is without an adequate remedy at law. See Response at 6. Defendants explain that Plaintiff is only seeking monetary damages in this lawsuit and assert that Plaintiff fails to explain why it would not be adequately compensated by an award of monetary damages. See id. at 7, 9. They contend that the Court cannot enter a preliminary injunction for the sole purpose of ensuring that Plaintiff will be able to obtain a collectable judgment. See id. at 7. Defendants also suggest that Plaintiff's claim of irreparable harm, mainly the dissipation of assets and lost value in Pyramid America and/or Pyramid II, is mere conjecture. See id. at 10.

**III. Applicable Law**

Generally, a preliminary injunction is an extraordinary and drastic remedy. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998); see also Davidoff & CIE, S.A. v. PLD Int'l Corp., 263 F.3d 1297, 1300 (11th Cir. 2001). Indeed, "[a] preliminary injunction is a powerful exercise of judicial authority in advance of trial." Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1284 (11th Cir. 1990). Thus, in order to grant a request for preliminary injunctive relief, the movant bears the burden to clearly establish the following: "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction were not granted, (3) that the threatened injury to the [movant] outweighs the harm an injunction may cause the [opposing party], and (4) that granting the injunction would not disserve the public

interest." Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998); see also Davidoff & CIE, S.A., 263 F.3d at 1300; McDonald's Corp., 147 F.3d at 1306; Ne. Fla., 896 F.2d at 1284-85. The movant, at all times, bears the burden of persuasion as to each of these four requirements. See Ne. Fla., 896 F.2d at 1285. And the failure to establish one of the requirements, such as an irreparable injury, will warrant denial of the request for preliminary injunctive relief and obviate the need to discuss the remaining elements. See Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994)); see also Siegel v. LePore, 234 F.3d 1163, 1176, 1179 (11th Cir. 2000) (concluding that "proof of irreparable injury is an indispensable prerequisite to a preliminary injunction"); Ne. Fla., 896 F.2d at 1285 (reversing the grant of injunctive relief absent a showing of irreparable harm).

In order to satisfy the irreparable injury requirement, the movant must establish a real and immediate threat of harm. See City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A., 243 Fed. Appx. 502, 504 (11th Cir. 2007); Alabama v. United States Army Corps of Eng'rs, 424 F.3d 1117, 1134 (11th Cir. 2005). The Eleventh Circuit has recognized that preliminary injunctive relief is not available merely upon a showing of an infringement of a legal right. See Alabama, 424 F.3d at 1127. It is only available "when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." Id. Indeed, "[p]reliminary injunctive relief derives from the necessity to restrain or compel conduct in those extraordinary situations where irreparable injury might result from delay or inaction." Id. at 1133. The purpose of this relief is "'to preserve the

relative positions of the parties until a trial on the merits can be held.'" Alabama, 424 F.3d at 1134 (quoting United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)). Thus, "if an injury can be 'undone through monetary remedies,' it is not irreparable." SME Racks, 243 Fed. Appx. at 504; see also Ne. Fla., 896 F.2d at 1285 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

Injunctive relief is not available when the alleged future injury is merely speculative; rather, the movant must show "an imminent threat of irreparable injury in the absence of a preliminary injunction." Alabama, 424 F.3d at 1133; see also Lyons, 461 U.S. at 111; SME Racks, 243 Fed. Appx. at 504; Siegel, 234 F.3d at 1176-77 ("As we have emphasized on many occasions, the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'"). The Eleventh Circuit has explained that the movant "must show either that he will suffer, or faces a substantial likelihood that he will suffer, irreparable injury. Siegel, 234 F.3d at 1176 n.9 (emphasis added). Likewise, preliminary injunctive relief is not available to remedy a past harm or an injury that has already occurred. See Alabama, 424 F.3d at 1133 ("Indeed, preventing irreparable harm in the future is 'the sine qua non of injunctive relief.'" (quoting Ne. Fla., 896 F.2d at 1285)). As the Eleventh Circuit further recognized in Alabama, "a preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law." Id.

## IV. Discussion

Plaintiff contends that, because it can trace its funds, which were allegedly misappropriated, to the purchase of the assets of Pyramid America and/or Pyramid II, it is

entitled to preliminary injunctive relief in the form of a pre-judgment constructive trust without any further showing. Indeed, it specifically argued at the hearing on the Motion, that, because it is requesting the imposition of a constructive trust in this lawsuit, it is not required to show that it has no adequate remedy at law. In essence, Plaintiff suggests that it is not required to satisfy the traditional requirements of a preliminary injunction because it can directly trace its funds to these assets.

The Court finds Plaintiff's contention in this regard to be without merit. The remedy of constructive trust itself is an equitable remedy, which is unavailable unless there is no adequate remedy at law. See Bender v. CenTrust Mortgage Corp., 51 F.3d 1027, 1030 (11th Cir. 1995) (recognizing that the remedy of constructive trust "applies where money is obtained by fraud, **unless** there is an adequate remedy at law"), modified, in part, on other grounds, 60 F.3d 1507 (11th Cir. 1995);[10] see also CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361, 1365 (S.D. Fla. 1999). The Eleventh Circuit likewise has been clear that preliminary injunctive relief is unavailable if there is an adequate remedy at law, such as monetary relief. See SME Racks, 243 Fed. Appx. at 504; Ne. Fla., 896 F.2d at 1285; see also Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1527 (11th Cir. 1994) ("It is axiomatic that equitable relief is only available where there is no adequate remedy at law.").

Additionally, the decision in Hudson Nat'l Bank v. Shapiro, 695 F. Supp. 544, 549-50 (S.D. Fla. 1988), which was cited by Plaintiff in support of its Motion, see Reply at 4, further

---

[10] At the hearing, Plaintiff suggested that the Bender decision is not binding because it relies on Georgia law. However, in Bender, the Eleventh Circuit affirmed the decision of the Southern District of Florida dismissing a claim for constructive trust. See 51 F.3d at 1029. In doing so, the decision specifically addressed Florida law in its constructive trust analysis. See id. Thus, Plaintiff's attempt to distinguish Bender is not well taken.

undermines Plaintiff's argument. In Shapiro, the plaintiff was able to trace its funds, which were fraudulently obtained, to a specific bank account belonging to some of the defendants. See id. at 550. However, merely finding a traceable asset was not sufficient to warrant the entry of preliminary injunctive relief. See id. at 549-50. Instead, the court required the plaintiff to show "an immediate danger of significant loss or damage." Id. at 549. It noted that the injunction was not to secure a future money judgment, but rather was proper because the plaintiff had shown that there was a great likelihood that the defendants would dispose of or hide the assets. See id. The court further required that the plaintiff establish the remaining traditional requirements supporting injunctive relief: the inadequacy of the plaintiff's remedy at law and service of the public interest. See id. at 549-50. Thus, this case demonstrates that, even if the Court were to find that the assets of Pyramid America and/or Pyramid II were properly considered the res of a constructive trust, that conclusion alone would not be sufficient to grant the requested relief in this case. Therefore, unless Plaintiff has satisfied all four of the traditional prerequisites to the entry of injunctive relief, it is not entitled to a preliminary injunction imposing a pre-judgment constructive trust over Pyramid America and Pyramid II as well as their assets.

The Court will first consider whether Plaintiff has established that it will suffer imminent and irreparable harm absent the entry of the requested injunction. Plaintiff contends that it will suffer immediate harm, absent a preliminary injunction, because the interests of Burnett and Groves in Pyramid America are subject to an imminent transfer to Lynch. See Verified Complaint ¶¶ 63-64, 158; Motion at 10-11. It also asserts that it has satisfied the requirement of imminent harm based on Lynch's propensity to sell his interest

in Pyramid America. See id. at 11. At the hearing on the Motion, however, the parties conceded that, in January 2008, the remaining interest of Groves and Burnett in Pyramid America was transferred to Lynch in accordance with the stock pledge agreement. See, e.g., id. Exs. 11-12; Achilles Decl. ¶ 9; Response at 4. Indeed, Defendants represent that this transfer occurred before Defendants were served with process in this case. See Response at 5 n.1. This transfer is also evident in the exhibits attached to the Verified Complaint. See Verified Complaint Exs. 11-12. Accordingly, as the transfer occurred two months before the filing of this Motion, Lynch's "imminent" acquisition of sole ownership interest in Pyramid America is not a basis for satisfying the irreparable harm requirement for preliminary injunctive relief.

Likewise, Plaintiff's assertion that Lynch has a propensity for selling the assets of Pyramid II and will sell his interest in Pyramid America to a bona fide purchaser is without merit because it lacks any foundation in facts presented to the Court. The allegations in Plaintiff's Verified Complaint do not even establish Lynch initially offered Pyramid II for sale. Instead, the allegations suggest that it was **Groves** who approached Lynch about acquiring the assets of Pyramid II. See Verified Complaint ¶¶ 26, 29. Plaintiff specifically alleges that "Groves became interested in acquiring the assets of Pyramid II from Defendant Lynch" and that "Groves negotiated the acquisition of the assets of Pyramid II with Lynch and Lynch's attorney, Rollings." Id. Moreover, the assertion of any future sale is nothing more than rank speculation and conjecture. Plaintiff submitted no evidence that Lynch has attempted to sell his interest in Pyramid America since he acquired a controlling interest in the company in February 2007. Additionally, Plaintiff has failed to provide any evidence that Lynch has

attempted to dissipate the assets of Pyramid America and/or Pyramid II since he gained control of the companies or that Pyramid II Janitorial Supplies and Equipment is not a profitable, successful, business. In fact, the only evidence regarding the status of Pyramid America and Pyramid II is that the business has been and continues to be profitable under Lynch's direction. See Achilles Decl. ¶ 9.

While Plaintiff baldly asserts that allowing Lynch to obtain sole ownership of the company "would be analogous to the proverbial fox guarding the hen house," Plaintiff provided no evidence in support of this assertion. Indeed, the allegations of and exhibits attached to the Verified Complaint suggest that this contention has no basis in fact. In February 2007, Lynch obtained a controlling interest in Pyramid America when he acquired 51% of the shares from Groves and Burnett. See Verified Complaint ¶ 54 & Ex. 6. In addition, at that time, Lynch entered into an employment agreement with Pyramid America wherein he became "primarily responsible for the day to day management and business decisions of PYRAMID AMERICA, LLC." Id. Ex. 6. Thus, since February 2007, Lynch has had a controlling interest as well as actual control over Pyramid America and Pyramid II, and there is no assertion that these Defendants took any action to dissipate assets or sell Pyramid America to a bona fide purchaser, despite the fact that, during this time, Defendants were well aware of Plaintiff's attempt to recoup its loss from them by the filing of two different lawsuits. In addition, Lynch obtained sole ownership of Pyramid America in January 2008, and, again, Plaintiff provided no evidence to suggest that Lynch or any of the other Defendants have taken any action to dissipate the assets of Pyramid America or Pyramid II or sell these entities to a bona fide purchaser. Thus, even assuming that these actions

could cause irreparable harm to Plaintiff, Plaintiff has failed to establish a factual basis for any threat that such harm will occur, much less that there is an imminent threat of such harm.

Moreover, the Court previously recognized that the allegations of the Verified Complaint were insufficient to establish that Plaintiff would suffer immediate and irreparable harm. See Order (Dkt. No. 4). In particular, the Court noted that Plaintiff was complaining of past harm based on allegedly fraudulent transfers of its funds that occurred nearly two years ago. See id. at 3. It further recognized that Plaintiff's allegations of harm were conclusory assertions without any factual support. See id. at 3-4. Finally, the Court acknowledged that, despite initially filing this action in June 2007 in the Northern District of Georgia, Plaintiff did not seek preliminary injunctive relief until January 2008 when the lawsuit was re-filed in this Court. See id. at 4. These reasons informed the Court's denial of Plaintiff's request for a temporary restraining order. See id. at 5.

Despite the Court's suggestion that Plaintiff needed to show what facts have changed since the initial filing of the lawsuit in the Northern District of Georgia and that Plaintiff should provide factual support for its conclusory assertions, Plaintiff did not remedy any of these deficiencies in the filing of its Motion and supporting materials. Other than citing a change in counsel, Plaintiff could provide no justification for why it waited until the filing of the lawsuit in this Court to seek preliminary injunctive relief. Likewise, Plaintiff's attempt to paint Lynch and the other Defendants as nefarious characters who intend to dissipate the assets of Pyramid America and/or Pyramid II or sell the company in order to prevent Plaintiff from any obtaining any recovery is unsupported by any specific factual allegations. As stated supra,

Plaintiff presented no factual allegations suggesting that Defendants have allegedly engaged in further wrongful acts or conduct beyond those for which Plaintiff seeks recovery in the Verified Complaint or that they have taken any steps to dissipate the assets of Pyramid America and/or Pyramid II or to sell the business to a bona fide purchaser.

In consideration of the foregoing, the Court concludes that Plaintiff has not met its burden of establishing that it will suffer (or that there is a substantial likelihood that it will suffer) irreparable harm absent the entry of the requested injunction. See Alabama, 424 F.3d at 1133-34; Siegel, 234 F.3d at 1176-77. Plaintiff's allegations of harm are entirely too remote and speculative. Indeed, it appears that Plaintiff is impermissibly seeking this injunction to remedy a past harm. Plaintiff merely contends that it will suffer irreparable harm **if** Defendants dissipate the assets of Pyramid America and/or Pyramid II or **if** Defendants sell the company to a bona fide purchaser. See Motion at 10-11. As in SME Racks, the Plaintiff here has only shown the prospect of harm, which the Eleventh Circuit has concluded "clearly does not meet the test of imminence." 243 Fed. Appx. at 504. As the failure to show imminent and real harm alone is sufficient to warrant denial of the Motion, see Siegel, 234 F.3d at 1176, the Court need not decide whether Plaintiff has established that there is no adequate remedy at law or any of the other requirements for preliminary injunctive relief.[11]

---

[11] The Court has grave concerns whether an injunction would be proper in this case even if Plaintiff could establish an immediate and substantial threat of dissipation of assets or that the sale of the business was imminent. Plaintiff has attempted to distinguish this case from the "well-established general rule that a judgment establishing a debt was necessary before a court of equity would interfere with the debtor's use of his property." Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc., 527 U.S. 308, 321 (1999); see also Rosen, 21 F.3d at 1527 (recognizing that "the general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment" (internal quotation marks omitted)). However, in explaining the basis for

## V. Conclusion

Accordingly, based on the foregoing, the Court will deny Plaintiff's Motion. In reaching this conclusion, the Court emphasizes that it has not prejudged any of the claims or allegations raised in the Verified Complaint, and it is not making any determination as to Plaintiff's ability to prevail in this matter. Indeed, its decision herein is in no way a disposition of the underlying claims. This ruling is based on the facts currently before the Court and not

---

the general rule, the United States Supreme Court explained why such relief is generally unavailable:

> "To sustain the challenged order would create a precedent of sweeping effect. This suit, as we have said, is not to be distinguished from any other suit in equity. What applies to it applies to all such. Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence."

Grupo Mexicano, 527 U.S. at 327 (quoting De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 222-23 (1945)). In support of its position, Plaintiff principally relies on a decision of the bankruptcy court and a district court decision resolving a bankruptcy appeal. See In re Hecker, 316 B.R. 375, 377 (Bankr. S.D. Fla. 2004); In re General Coffee Corp., 64 B.R. 702, 704 (S.D. Fla. 1986). Plaintiff also distinguishes this case from the factual circumstances presented in Rosen by alleging that this case involves the imposition of a constructive trust and the specific res is the assets of Pyramid America and/or Pyramid II. Thus, it alleges that the Court has jurisdiction to enter a preliminary injunction to protect the corpus of the trust. However, as the Court expressed at the hearing, it has concerns regarding this analysis because, despite the label that Plaintiff places on the relief sought, it is, at bottom, seeking to recoup its loss of $2.3 million. Thus, as in Ne. Fla., Plaintiff's damage claim here appears to be chiefly economic. See 896 F.2d at 1286. Indeed, it seems that Plaintiff could be fully compensated by the mere payment of a sum of money, and the only reason for seeking preliminary injunctive relief is to ensure the judgment is collectable, which is not a concern that generally can be remedied in equity. See Rosen, 21 F.3d at 1530-31 ("The test of the inadequacy of a remedy at law is whether a judgment could be obtained, not whether, once obtained it will be collectible."); CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361, 1365 (S.D. Fla. 1999) (finding that a concern that damages may be difficult to collect is not a basis for imposing a constructive trust). Additionally, there is some question whether a constructive trust is even an available remedy for the tort claims asserted in this lawsuit. See Mitsubishi Int'l Corp. v. Cardinal Textiles Sales, Inc., 14 F.3d 1507, 1518 n.18 (11th Cir. 1994). Nonetheless, as Plaintiff has failed to establish that the alleged irreparable harm is actual and imminent, the Court need not decide whether this type of preliminary injunctive relief is available or whether the requested injunction is overbroad, impermissibly vague, or otherwise inappropriate.

a fully developed record. The Court cannot predict how the dispute in this case will be resolved once there has been a fully developed record.

Therefore, it is hereby **ORDERED**:

Plaintiff's Amended Motion for Preliminary Injunction (Dkt. No. 43) is **DENIED**, and the evidentiary hearing scheduled for **MAY 6, 2008**, at **10:00 a.m.**, is **CANCELLED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 2nd day of May, 2008.

Marcia Morales Howard
**MARCIA MORALES HOWARD**
United States District Judge

lc1
Copies to:

Counsel of Record